Thelma BILLIAR, Plaintiff-Appellee,

v.

MINNESOTA MINING AND MANUFACTURING COMPANY, Defendant/Third Party Plaintiff-Appellant,

v.

MENNEN–GREATBATCH ELECTRONICS, Third Party Defendant-Appellant.

Nos. 277, 479, Dockets 79–7385, 79–7503.

United States Court of Appeals, Second Circuit.

Argued Dec. 13, 1979.

Decided May 28, 1980.

Howard V. Burke, Buffalo, N. Y. (Canale, Madden & Burke, Buffalo, N. Y.), for plaintiff-appellee.

Daniel T. Roach, Buffalo, N. Y. (Brown, Maloney, Gallup, Roach & Busteed, P. C., Buffalo, N. Y.), for defendant/third party plaintiff-appellant.

Gerald Grace, Jr., Buffalo, N. Y. (Cox, Barrell, Walsh, Roberts & Grace, Buffalo, N. Y.), for third party defendant-appellant.

Before LUMBARD and VAN GRAAFEILAND, Circuit Judges, and CARTER, District Judge.*

ROBERT L. CARTER, District Judge:

Plaintiff-appellee Thelma Billiar was employed by third-party defendant-appellant Mennen-Greatbatch Electronics ("Mennen") as an assembler of electrodes for use in cardiac pacemakers. One step in the assembly process required plaintiff to prepare an electrical resin by mixing two liquid components manufactured by defendant-appellant Minnesota Mining and Manufacturing Company ("3M") and distributed under the name Scotchcast Resin No. 5 ("Scotchcast").

The Scotchcast components were delivered to appellee's work station in containers marked A and B. According to her supervisor's instructions, Billiar would mix two parts A to one part B with a wooden tongue depressor in a small paper muffin cup, and place a drop of the mixture into each electrode. Temperature in the workroom was kept very warm.

The Scotchcast B container bore a label stating:

CAUTION: Vapor harmful. Product contains toxic and caustic components. Avoid contact with skin and eyes, preferably by use of protective clothing. Use in well ventilated areas. Avoid splashing and prolonged and repeated breathing of vapors. Instructions in case of exposure: Contact with skin—wash with soap and water immediately after exposure. Contact with eyes—flush eyes with plenty of water and get prompt medical attention.

Component A of the Scotchcast mixture was bisphenola type ephicalorhydin resin. Part B, the hardening agent, contained 80% aroclor 1254 and 20% diethylenetriamine. Diethylenetriamine can cause severe chemical burns to skin and eyes. 3M's toxicology department possessed a Chemical Safety data sheet on diethylenetriamine, published by the Manufacturing Chemists Association, which recommended that persons using the chemical wear safety goggles and face shields and that containers of the chemical bear a label containing the words "Danger! Causes Severe Eye and Skin Burns."

On December 30, 1969, while plaintiff was mixing a batch of Scotchcast, some of the contents of the paper cup spilled onto her hand. Plaintiff felt the moisture and wiped her hand on her smock. A few minutes later, she accidentally brushed some perspiration from the right side of her face with her hand. Feeling a tingling and slightly burning sensation on her face, plaintiff notified a supervisor who set up washing apparatus while plaintiff continued to work. With the supervisor's help, plaintiff washed her face with soap and water for about 15 minutes. Nevertheless, plaintiff suffered a severe chemical burn in the area of her right eye. After patch testing, a dermatologist identified the causative agent as Scotchcast, component B. The burn required the attention of many physicians over several years, as well as

* Of the Southern District of New York, sitting by designation.

skin grafts. Plaintiff was left with a permanent facial scar, and still feels some pain in very cold and windy weather.

Plaintiff commenced this action in the district court of the Western District of New York against 3M for its negligent failure to warn her adequately of the dangers of Scotchcast. 3M impleaded Mennen on a theory of failure to provide a safe place to work, alleging that Mennen had failed to provide protective clothing, to warn plaintiff, or to instruct her in the safe use of Scotchcast.

The trial court denied defendants' motions for a directed verdict at the close of plaintiff's case, and for judgment notwithstanding the verdict after the jury awarded damages to plaintiff in the sum of $150,000.00. Both 3M and Mennen appeal the denial of these motions. In addition, third-party defendant-appellant Mennen appeals the jury's apportionment of 68% of the liability to it. We affirm.

In deciding whether the trial court erred in submitting the case to the jury, we must apply the substantive law of New York in this diversity case. Although the relevant case law is rather sparse, we understand it as requiring that, on these facts, questions of defendant 3M's duty to warn and of the adequacy of the warnings be determined by the trier of fact.

I

■ It is well settled that New York law holds the supplier of a product which it knows or should know is dangerous if used in the usual and expected manner to a duty adequately to warn users of the product of the danger unless the danger is obvious or well known. *Haberly v. Reardon*, 319 S.W.2d 859, 862–63 (Mo.1958) (applying New York law); *Rosebrock v. General Electric Co.*, 236 N.Y. 227, 240–41, 140 N.E. 571, 575 (1923); *Howard Stores Corp. v. Pope*, 1 N.Y.2d 110, 114–15, 150 N.Y.S.2d 792, 797, 134 N.E.2d 63, 66 (1956); *Young v. Elmira Transit Mix, Inc.*, 52 A.D.2d 202, 205, 383 N.Y.S.2d 729, 731 (4th Dep't 1976).

■ When the user is fully aware of the nature of the product and its dangers, however, the supplier cannot be held liable for failure to warn him. *Rosebrock v. General Electric Co.*, 236 N.Y. at 236, 140 N.E. at 573; *Howard Stores, Inc. v. Pope*, 1 N.Y.2d at 115, 150 N.Y.S.2d at 797, 134 N.E.2d at 66; *McDaniel v. Williams*, 23 A.D.2d 729, 257 N.Y.S.2d 702, 702–03 (1st Dep't 1965). The rationale for this "knowledgeable user" exception is that knowledge of the danger is equivalent to prior notice; no one needs notice of that which he already knows. *Borowicz v. Chicago Mastic Co.*, 367 F.2d 751, 758 (7th Cir. 1966) (applying New York law); *McDaniel v. Williams*, 23 A.D.2d at 729, 257 N.Y.S.2d at 702–03.

Appellants claim that plaintiff was a knowledgeable user; because she was fully aware of the danger of Scotchcast, 3M had no duty to warn her. Therefore, they argue, the question of the adequacy of the warning provided on the Scotchcast B container should never have been submitted to the jury.

A.

We note initially that it is not at all clear whether New York courts would consider Billiar to be the kind of user who could fall within the knowledgeable user exception. The exception was first articulated in a case where the users were expert electricians, professionally experienced with the product in question. *Rosebrock v. General Electric Co.*, 236 N.Y. at 237–38, 140 N.E. at 574. Subsequently, the exception has been applied only to professionals and skilled tradespeople. *E. g., Howard Stores v. Pope*, 1 N.Y.2d 110, 150 N.Y.S.2d 792, 134 N.E.2d 63 (floor finisher); *McDaniel v. Williams*, 23 A.D.2d 729, 257 N.Y.S.2d 702 (experienced beautician); *Borowicz v. Chicago Mastic Co.*, 367 F.2d 751 (professional carpenter). Indeed, several courts have described the exception as applicable to members of a trade or profession. *See Littlehale v. E. I. du Pont de Nemours & Co.*, 268 F.Supp. 791, 798 (S.D.N.Y.1966) (Tenney, J.); *Ikerd v. Lapworth*, 435 F.2d 197, 202 (7th Cir. 1970), quoting *Thrash v. U-Drive-It Co.*, 93 Ohio App. 388, 113 N.E.2d 650, 656 (1951).

Plaintiff-appellee can hardly be deemed a professional or skilled artisan; she was an unskilled worker who had worked in Mennen's electrode department for only ten months. The knowledgeable user exception has not been applied to lay persons, even those with some familiarity with the product. *See, e. g., Young v. Elmira Transit Mix, Inc.,* 52 A.D.2d at 204, 383 N.Y.S.2d at 730 (do-it-yourself builder with some experience with cement); *Haberly v. Reardon Co.,* 319 S.W.2d at 867–68 (do-it-yourself painter with knowledge that paint could injure eyes).

### B.

Assuming that appellee could fall within the knowledgeable user exception, however, we must decide whether the district court should have held her knowledgeable as a matter of law, or whether the question of her knowledge was properly submitted to the jury as a question of fact.

To support their contention that plaintiff should have been deemed a knowing user as a matter of law, appellants rely on plaintiff's testimony that she had read the warning label on the Scotchcast container and that her supervisor had warned her not to get the product on her skin, as well as on evidence that plaintiff had experienced the toxic effects of the resin on prior occasions and had received medical attention for it.

Appellants apparently argue that as long as Billiar knew the product was dangerous, she was sufficiently knowledgeable to fall within the exception; the fact that she was ignorant of the severity of the danger is immaterial. As we read the cases, appellants are mistaken.

Plaintiff argues that the Scotchcast label did not inform her of the severity of the injury she could receive from skin contact with Scotchcast. The evidence showed that she had never been similarly injured before, and that her prior reaction was limited to tiny blisters on her fingers, which her doctor had treated only with a glycerine salve. Thus while she testified that she knew the product was harmful to skin, she also stated that she did not know how extremely harmful it could be.

The extent of plaintiff's knowledge of the danger was thus in dispute. In such a case, New York courts have left the question whether there was a duty to warn to the trier of fact. *See Rosebrock v. General Electric Co.,* 236 N.Y. at 237, 140 N.E. at 574; *Young v. Elmira Transit Mix, Inc.,* 52 A.D.2d at 205, 383 N.Y.S.2d at 731; *see also Haberly v. Reardon Co.,* 319 S.W.2d at 867–68 (applying New York law).

In *Haberly v. Reardon Co.,* 319 S.W.2d 859 (Mo.1958) (applying New York law), plaintiff, a 12-year old boy, was blinded when a small quantity of cement-based paint accidentally got in his eye while he was helping his father. The father, who was not a professional painter, had read the warning on the box stating that the paint contained Portland cement, that the product's alkalinity could be irritating to tender or sensitive skin, and that prolonged contact with the skin should be avoided. In addition the father testified that he knew that paint of any kind would hurt the eye. Nevertheless, the court held that New York law would permit the jury to find that the defendant had breached its duty to warn of the danger. *Id.* at 867–68.

More recently, in *Young v. Elmira Transit Mix, Inc.,* 52 A.D.2d 202, 383 N.Y.S.2d 729 (4th Dep't 1976), a do-it-yourself home builder sued the supplier of Portland cement to recover for burns suffered from contact with the cement. The supplier had provided no warning at all, although he knew that wet cement could cause severe caustic burns. Plaintiff testified at trial that he had worked with cement for over 30 years on odd jobs, but had never been burned before; that he knew that cement contained lime, but did not know that contact with it could burn his skin; that he knew that an open cut exposed to wet cement would get sore and take longer to heal. The trial court instructed the jury that evidence of plaintiff's knowledge of cement was to be given whatever weight they considered appropriate and charged them as follows:

[T]he manufacturer of a product which is reasonably certain to be dangerous if used in a way in which he should reasonably foresee it would be used is under a duty to exercise reasonable care, to give reasonable and adequate warning of any dangers known to him or which, in the exercise of reasonable care, he should have known and which the user of the product ordinarily would not discover. Reasonable care means that degree of care which a reasonably prudent concrete manufacturer would exercise under the same circumstances.

*Id.* at 205, 383 N.Y.S.2d at 731. This instruction closely tracks the language of Section 388 of the Restatement of Torts, 2d edition,[1] and served as the model for Judge Curtin's charge in the instant case.

On appeal, the defendant in *Young* argued, *inter alia*, that he had no duty to warn plaintiff of the danger because the dangerous properties of cement are well known and because plaintiff had testified to his own knowledge of the harmful effects of wet cement on the skin. The Appellate Division, while noting that "[c]ement is an ancient product" and that "dangers of irritations and burns from [lime] have been known for centuries," *id.*, 383 N.Y.S.2d at 730, held that Restatement § 388 controls and that the question of whether defendant had a duty to warn was properly submitted to the jury. *Id.* at 731.

*Young* does not discuss the knowledgeable user doctrine, but the extent of the plaintiff's knowledge of the dangers of cement was vigorously argued by the supplier on appeal. As Restatement § 388 does not focus on the plaintiff's actual knowledge, but on the supplier's reasonable expectations, the Appellate Division may have concluded that a supplier should not be freed of liability merely because, despite negligent failure to warn, the plaintiff happened to have actual knowledge. Alternatively, the Appellate Division may have thought that the user's partial knowledge in *Young* could not be held sufficient as a matter of law to exempt the supplier from its duty to warn, but was one fact to be considered by the jury. In approving the submission of the question of duty to warn to the jury, the court, at a minimum, held that it was for the trier of fact to decide whether a duty existed in the circumstances. *Id.* at 731. *Young* seems to us to be strong authority for the submission of the question of duty to warn to the jury when the user is a nonprofessional with some knowledge of the harmful propensities of the product.

We do not agree with appellants that *Young* is inapplicable because the defendant in that case supplied no warning whatsoever. Where, as here, the supplier has provided some warning, plaintiff's knowledge of that warning could be dispositive only if the warning was clearly adequate. *Cf. Rosebrock v. General Electric Co.*, 236 N.Y. at 235, 140 N.E. at 573; *Butler v. L. Sonneborn Sons, Inc.*, 296 F.2d 623, 624, 626 (2d Cir. 1961) (applying general tort principles). The duty is not merely to warn, but to warn adequately. It would be anomalous to hold that providing an inadequate warning could exempt the supplier of a dangerous product from this duty. Thus, on the facts of the instant case, determining the adequacy of the warning was essential to determining plaintiff's knowledge of the danger.

---

1. The Restatement (Second) of Torts § 388 (1965) provides:

    Chattel Known to be Dangerous for Intended Use

    One who supplies directly or through a third person a chattel for another to use is subject to liability to those whom the supplier should expect to use the chattel with the consent of the other or to be endangered by its probable use, for physical harm caused by the use of the chattel in the manner for which and by a person for whose use it is supplied, if the supplier

    (a) knows or has reason to know that the chattel is or is likely to be dangerous for the use for which it is supplied, and

    (b) has no reason to believe that those for whose use the chattel is supplied will realize its dangerous condition, and

    (c) fails to exercise reasonable care to inform them of its dangerous condition or of the facts which make it likely to be dangerous.

Unless we could hold as a matter of law that plaintiff's knowledge, aside from or in combination with knowledge derived from reading the label, was sufficient to apprise her fully of the danger, the question of the adequacy of the warning was correctly submitted to the jury. We cannot so hold. Here, plaintiff had read the warning and knew, in addition, that contact with Scotchcast could cause blisters on her fingers. This is not necessarily equivalent to knowledge that contact with the product could cause severe chemical burns.

We conclude that New York law would allow the jury to decide whether plaintiff was sufficiently aware of the danger to exempt the supplier from its duty to warn. The district court instructed the jury that they were to consider the extent of plaintiff's knowledge of the danger in determining whether defendant had fulfilled its duty to warn adequately. We find that charge correct on the facts of this case.

### C.

Mennen, citing *Hafner v. Guerlain, Inc.*, 34 A.D.2d 162, 310 N.Y.S.2d 141 (1st Dep't 1970), argues that New York law places no duty on a manufacturer to foresee and warn against the remote possibility that a small number of users will experience a severe reaction. The *Hafner* case turned on a finding that the manufacturer could not have reasonably foreseen the likelihood that its widely-sold perfume would cause plaintiff's highly abnormal allergic reaction. If the injury is reasonably foreseeable, however, even if rare, the seller cannot rely on its history of good fortune to exempt itself from liability. *See Butler v. L. Sonneborn Sons, Inc.*, 296 F.2d at 626.

Here, the evidence showed that 3M had reason to foresee that chemical burns such as Billiar's could result from skin contact with Scotchcast. Indeed, the warning label provided by 3M evinces its awareness that contact with skin could be harmful. The fact that Mennen had never experienced a similar injury among its workers is irrelevant to 3M's duty to warn.

### II

The appellants argue, Mennen explicitly and 3M implicitly, that the trial court should have found the warning adequate as a matter of law because the label mentioned Scotchcast's toxic and caustic components. To our knowledge, no case applying New York law has held a warning adequate as a matter of law.[2] Moreover, we could overturn the verdict only if we concluded that no rational jury could have decided on the evidence that a clearer, stronger, or more explicit warning was called for under the circumstances. *See Simblest v. Maynard*, 427 F.2d 1, 4 (2d Cir. 1970); *Stief v. J.A. Sexauer Manufacturing Co.*, 380 F.2d 453, 462 (2d Cir.), *cert. denied*, 389 U.S. 897, 88 S.Ct. 220, 19 L.Ed.2d 216 (1967). In light of the recommendations of the Manufacturing Chemists Association and testimony that the potency of diethylenetriamine was not diminished when mixed with the other components of Scotchcast, there was clearly evidence from which a jury could conclude that 3M failed to warn adequately of the dangers of the product.

Mennen also contends that in the absence of expert evidence on what a more adequate label should have provided, the jury could have found the warning inade-

2. *But cf. Stief v. J.A. Sexauer Manufacturing Co.*, 380 F.2d 453 (2d Cir.), *cert. denied*, 389 U.S. 897, 88 S.Ct. 220, 19 L.Ed.2d 216 (1967). The court held that the question of inadequate warning should not have been submitted to the jury where the cause of the injury remained a mystery and was therefore not foreseeable to the defendant. *Id.* at 458, 461. In the course of the opinion, the court held that the warning label on a chemical drain cleaner, stating that the product contained sodium hydroxide, could not he held inadequate for failing to say it contained lye or caustic soda, because the evidence showed that the plaintiff, a professional plumber with long experience with the product, fully understood the label and followed its instructions. The court reasoned that different wording would not have added to his knowledge. *Id.* at 460. In the instant case, this is the very question in dispute between the parties. Moreover, the *Stief* court did not rely on New York law, for Pennsylvania law applied to that diversity case.

quate only by engaging in speculation. This argument is meritless. Under New York law, the jury does not need expert testimony to find a warning inadequate, but may use its own judgment considering all the circumstances. *See Young v. Elmira Transit Mix, Inc.*, 52 A.D.2d at 205, 383 N.Y.S.2d at 731; *Rainbow v. Elia Building Co.*, 49 A.D.2d 250, 253, 373 N.Y.S.2d 928, 931 (4th Dep't 1975).

Next, Mennen argues that even if the warning was inadequate, this inadequacy was not shown to be the proximate cause of the plaintiff's injury. Since plaintiff testified that she brushed her face with her hand "inadvertently," Mennen claims that she would have behaved the same way even if a more adequate warning had been provided.

This ingenious argument rests not on proven fact, but on the dubious premise that a person will be equally careless whether the harm risked is great or slight. We cannot hold as a matter of law that a clear warning that severe chemical burns might result would not cause a reasonably prudent person to be more careful than she would be if the only known risk were slight blistering. *See Haberly v. Reardon Co.*, 319 S.W.2d at 867.

■■■ The New York rule, cited by Mennen itself, is clear:

> The negligence of the defendant cannot be excluded as one of the actual causes of the accident, unless it can be said *with certainty* that, even if the defendant had not been negligent, the accident would nevertheless have happened. It is not enough to speculate "that the same harm might possibly have been sustained had the actor not been negligent." Restatement of Torts, § 432, comment "c". The negligent act must be regarded as one of the actual causes of the injury if it was a substantial factor in bringing the injury about.

*Rugg v. State*, 284 A.D. 179, 131 N.Y.S.2d 2, 6 (3d Dep't 1954) (emphasis added). The district judge correctly instructed the jury that proximate causation requires finding that defendant's negligence was a material and significant factor contributing to plaintiff's injury. The jury's finding of such causation was not against the weight of the evidence.

### III

■■■ The final issue is whether the allocation by the jury of 68% of the fault to Mennen was against the weight of the evidence.

We agree with the district court that there was ample evidence in the record to support the jury's determination. The only protective clothing Mennen supplied to plaintiff were smocks and rubber gloves with cut-off fingers. Moreover, Mennen did not require, instruct or even encourage plaintiff to wear such protective clothing, but merely made it available. There was some evidence from which a jury could find that Mennen did not attempt to impress upon plaintiff the extreme hazard posed by Scotchcast.

Further, plaintiff's supervisor testified that she did not require plaintiff to read the warnings printed on the Scotchcast cans; that she gave no safety instructions to plaintiff aside from telling her to wash her hands and not to touch her face; that she did not instruct plaintiff to use soap and water, although these were provided; and that she gave no safety warnings after the first day, at which time plaintiff was also instructed on how to perform the complex procedural steps of making electrodes. In addition, there was undisputed evidence that Mennen decided what implements to provide. The choice of tongue depressors and small paper cups for mixing these caustic chemicals was further evidence of Mennen's cavalier attitude toward plaintiff's safety.

■■■ When a jury's determination is based on an interpretation of facts within their sphere, New York law does not permit a reviewing court to set aside the verdict unless the evidence so preponderates in favor of the party against whom the verdict was rendered that it is clear that the jury did not reach its conclusion on a fair inter-

pretation of the evidence, *Calabrese v. Ontario County,* 58 A.D.2d 1008, 1009–10, 397 N.Y.S.2d 493, 495 (4th Dep't 1977); *Marshall v. Mastodon, Inc.,* 51 A.D.2d 21, 23, 379 N.Y.S.2d 177, 180 (3d Dep't 1976), or if a contrary conclusion is the only reasonable inference that can be made from the proven facts. *Zipay v. Benson,* 47 A.D.2d 233, 235, 365 N.Y.S.2d 920, 922 (3d Dep't 1975). The federal standard in this circuit is virtually identical. *See Mattivi v. South African Marine Corp., "Huguenot,"* 618 F.2d 163, 167–68 (2d Cir. 1980); *Simblest v. Maynard,* 427 F.2d at 4.

We find that there was sufficient evidence from which a jury could reasonably determine that Mennen failed to caution, instruct and supervise plaintiff adequately and that it did not fulfill its duty as charged by the trial judge to provide plaintiff with a safe place to work in regard to use of Scotchcast.

VAN GRAAFEILAND, Circuit Judge (dissenting):

If there was ever an English word whose meaning is crystal clear, that word is "caustic". The Century Dictionary of 1895 said that it meant "capable of burning, corroding, or destroying the tissue of animal substances." The New Century Dictionary (1931) defines it as "capable of burning, corroding, or destroying animal tissue." In Webster's Third New International Dictionary (1971) "caustic" is defined as "capable of destroying the texture of anything or eating away its substance by chemical action" and "capable of destroying animal or other organic tissue." Webster's New Elementary Dictionary, intended for use by school children in the elementary grades, says that "caustic" means "capable of destroying or eating away by chemical action." It is the "caustic" action of chemical drain cleaners that destroys the organic matter in clogged drains and that can be equally injurious to human tissue.

When the label on a product urges "CAUTION", stating that the product contains caustic components and that contact with the skin should be avoided, preferably by use of protective clothing, I suggest that no

reasonable person can be in doubt as to what she is being warned against. When, as in the instant case, the plaintiff has been using the product for 10 months, has been warned orally that it could be harmful to her skin, and on several occasions has burned her hands seriously enough to require medical treatment, I can see no basis whatever for a finding that she is the innocent victim of inadequate warning. I would reverse. *See Verdiglione v. Ridge Lumber, Inc.,* 23 A.D.2d 817, 258 N.Y.S.2d 471 (1965), *aff'd,* 17 N.Y.2d 740, 270 N.Y.S.2d 208, 217 N.E.2d 33 (1966); *Stief v. J. A. Sexauer Manufacturing Co.,* 380 F.2d 453 (2d Cir.), *cert. denied,* 389 U.S. 897, 88 S.Ct. 220, 19 L.Ed.2d 216 (1967); *Moschkau v. Sears, Roebuck and Co.,* 282 F.2d 878 (7th Cir. 1960); *Hunter v. E. I. du Pont de Nemours & Co.,* 170 F.Supp. 352 (W.D.Mo. 1958).